

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-1-2005

# Klein v. Autek Corp

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-3072

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Klein v. Autek Corp" (2005). *2005 Decisions.* Paper 574.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/574

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 04-3072

———

BRUCE KLEIN; WILLIAM LEE, JR.; NEIL MOODY; VALHALLA INVESTMENT
PARTNERS; JOHN GREENSHIELDS; WALL STREET DIGEST DEFINED BENEFIT
PLAN; DONALD & JOY ROWE; TIM OLSON; DAVID TONER; WILLIAM
KENNEDY; PATRICK PARCELLS; ROBERT LADONE; LADONNE LEATHER;
ALAN MILTON; MANTIS LLC; MICHAEL EDGECOMBE; GEOFCO HOLDINGS;
STEWART DAUMAN & KAREN ZIMMERMAN; BECAUSE CORP.; SHARON
MOODY; PINNACLE COMMUNICATIONS,

Appellants

v.

AUTEK CORPORATION; COLLECTIVE WIRELESS, INC.; APSAIRA INC.; ATUL
CHOWDHRY; NEIL CHOWDHRY; SUNITA CHOWDHRY; MICHAEL
ALEXANDER; DAVID FELDMAN; TEJAL NANAVATI; STEPHEN M.
ROSENBERG; ROBERT D. WENTWORTH; COWAN LIEBOWITZ & LATMAN,
P.C.; JENKENS & GILCHRIST PARKER CHAPIN, LLP

———

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 01-cv-05751)
District Judge: Honorable Faith S. Hochberg

———

Argued June 7, 2005

Before: FUENTES, VAN ANTWERPEN, and BECKER, Circuit Judges.

-1-

(Filed: September 1, 2005)

———

Irving Bizar (Argued)
Robert S. Schwartz
Ballon Stoll Bader & Nadler, P.C.
1450 Broadway, 14th Floor
New York, New York 10018

ATTORNEYS FOR APPELLANTS BRUCE KLEIN, ET. AL.

Stephen R. Buckingham (Argued)
Jason E. Halper
Matthew P. Boylan
Lowenstein Sandler P.C.
65 Livingston Avenue
Roseland, New Jersey 07068

ATTORNEYS FOR APPELLEE JENKENS & GILCHRIST PARKER CHAPIN, LLP

David M. Freeman (Argued)
Randee M. Matloff
Nagel Rice & Mazie, LLP
301 S. Livingston Avenue, Suite 201
Livingston, New Jersey 07039

ATTORNEYS FOR APPELLEES ATUL CHOWDHRY, SUNITA CHOWDHRY, NEIL
CHOWDHRY AND COLLECTIVE WIRELESS, INC.

Frank T. Cara
McDonough Marcus Cohn Tretter Heller & Kanca, LLP
Cruz Plaza
Holmdel, NJ 07733

Andrew G. Tretter (Argued)
McDonough Marcus Cohn Tretter Heller & Kanca, LLP
145 Huguenot Street
New Rochelle, New York 10801

ATTORNEYS FOR APPELLEE STEPHEN M. ROSENBERG

FUENTES, Circuit Judge.

Plaintiffs appeal from the District Court's dismissal of their securities fraud claim for failing to comply with the heightened pleading requirements of the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4 et seq., and Federal Rule of Civil Procedure 9(b). Plaintiffs contend that the District Court misapplied the rigorous pleading requirements of the PSLRA and Rule 9(b). Plaintiffs also contend that the District Court erred in denying them leave to amend their complaint for a second time. We affirm substantially for the reasons expressed in the thorough and persuasive opinion of the District Court. We add the following discussion to underscore our own agreement with that decision.

**I.**

Plaintiffs invested approximately $2.1 million in Collective Communications Corporation ("Collective"), a start-up company formed in the late 1990s to market a secure wireless information network that would enable corporate databases to communicate with personal digital assistants. After Collective filed for bankruptcy, Plaintiffs brought an action alleging claims for, among others, securities fraud under § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b-5 against several defendants, including Atul Chowdhry and his relatives Neil and Sunita Chowdhry; Collective's outside attorney Stephen

M. Rosenberg; and Rosenberg's former law firms, Cowan Liebowitz & Latman, P.C. ("Cowan Liebowitz") and Jenkens & Gilchrest Parker Chapin, LLP ("Jenkens").[1] As stated in the Amended Complaint, the Plaintiffs allege that the Defendants, principally Atul Chowdhry and Rosenberg, made several oral and written misrepresentations to induce the Plaintiffs to invest in Collective, including: (1) that Collective's liabilities were $250,000, a figure that failed to account for actual accrued liabilities to Tata Infotech, Ltd. ("Tata"), and unpaid bills to outside firms; (2) that Collective had a proprietary right in the billing software to be licensed from Tata, when in reality Tata refused to negotiate a sub-license with Collective until outstanding bills had been paid; and (3) that Autek Corporation, a corporation affiliated with Chowdhry, was owed money by Collective, when in fact Autek's corporate status had been revoked.

The District Court dismissed the Plaintiffs' initial complaint, noting that "it is nearly impossible to discern from the instant pleading precisely which defendants are alleged to have made direct misstatements to which plaintiffs, what those misstatements were, when they were made, how they were false, and why each defendant is alleged to have acted with the requisite degree of scienter." App. at 280. The District Court <u>sua sponte</u> granted Plaintiffs leave to amend, an opportunity which the Plaintiffs failed to seize. As the District Court noted, "[g]iven an opportunity to file an Amended Complaint, Plaintiffs made a

---

[1]Cowan Liebowitz settled with the Plaintiffs in November 2003 and is not a party to the instant appeal.

strategic decision to include very little additional information.  In sum and substance, the Amended Complaint is highly similar to the original Complaint [but for a few new paragraphs]." App. at 7.

**II.**

Our review of the District Court's dismissal of the Amended Complaint pursuant to Rule 12(b)(6) is plenary.  See In re Alpharma, Inc. Sec. Litig., 372 F.3d 137, 146 (3d Cir. 2004).  We must "accept as true all of the factual allegations in the complaint as well as the reasonable inferences that can be drawn from them and may dismiss the complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."  Id. (quotation and citation omitted).  The District Court's denial of leave to amend the Amended Complaint is reviewed for an abuse of discretion.  See id. at 153.  Leave to amend may be denied where the amendment would cause undue delay or prejudice, or where the amendment would be futile.  Id.  We have jurisdiction over the District Court's order pursuant to 28 U.S.C. § 1291.

**III.**

Plaintiffs raise several arguments on appeal, all of which we find unpersuasive. First, we reject the Plaintiffs' argument that the rigorous pleading requirements of the PSLRA should be relaxed in this case to the extent that no class action lawsuit is involved, which the Plaintiffs contend was the principal focus of the PSLRA. We note that 15 U.S.C. § 78u-4(b), which contains the heightened pleading requirements applicable to this matter, is titled

"Requirements for securities fraud actions" and plainly states that it applies to "any private action under this chapter," without reference to whether the action is brought as a class action or not. Moreover, we note that a different provision of the PSLRA, 15 U.S.C. § 78u-4(a), specifically states that it applies only to "Private class actions," thus reinforcing our view that Congress intended 15 U.S.C. § 78u-4(b) to apply to all private actions. See 15 U.S.C. § 78u-4(a) (stating that "[t]he provisions of this subsection shall apply in each private action . . . brought as a plaintiff class action"). In light of the plain language of the PSLRA, we can see no basis to relax the pleading requirements applicable to securities fraud claims that do not involve class actions.

Neither does our decision in EP Medsystems, Inc. v. Echocath, Inc., 235 F.3d 865 (3d Cir. 2000), require a different conclusion. In EP Medsystems, a single corporate plaintiff brought a securities fraud action against a single corporate defendant, alleging that the defendant's CEO made a misrepresentation with regards to the licensing prospects of the defendant's new product line. On appeal, we reversed the district court's dismissal of the complaint, finding that the PSLRA was to be applied less stringently because the plaintiff's complaint did "not fall into the pattern of the usual securities action." Id. at 885; see also id. at 881 (noting that complaint was not "a 'cookie cutter complaint' or a class action brought by shareholders with an insignificant interest in the company; [rather] it [was] an individual action, based on a transaction arising from direct negotiations between the parties to the action"). This case bears no resemblance to EP Medsystems. While the cause of action in

EP Medsystems was "more akin to a contract action than a securities action," id. at 871, and involved a single corporate plaintiff and single corporate defendant, this matter involves a "plain vanilla" securities fraud claim: several aggrieved Plaintiffs contend that they made investments in reliance on the Defendants' oral and written misrepresentations and/or omissions. Accordingly, given that this case involves the type of typical securities fraud actions contemplated by 15 U.S.C. § 78u-4(b), we see no reason to apply the narrow exception to the PSLRA carved out by EP Medsystems.

Second, we reject the Plaintiffs' contention that the Amended Complaint satisfied the rigorous pleading requirements of the PSLRA and Rule 9(b). We have previously held that a plaintiff alleging securities fraud must plead the "who, what, when, where and how" of each specific false representation, "the first paragraph of any newspaper story." In re Advanta Corp. Sec. Litig., 180 F.3d 525, 534 (3d Cir. 1999) (citation and quotation omitted). Moreover, because the Amended Complaint was based "on information and belief," the PSLRA requires that the Plaintiffs "state with particularity all facts on which that belief is formed." In re Alpharma Inc. Sec. Litig., 372 F.3d at 147 (quoting 15 U.S.C. § 78u-4(b)). We agree with the District Court that the "Plaintiffs have failed to plead most of the 'who, what, when, where and how' of this action; the emotion and theories are pled, but the PSLRA requires specific facts." App. at 20.

For instance, as for the "what," the Amended Complaint offers only a cursory description of the identity of the materials containing the allegedly false statements. The

-7-

Amended Complaint does not describe, either specifically or by category, what the written materials were that contained the false statements but rather speaks elusively of "various undated documents," "writings," "further undated writings," "documents," "an offering statement," "supplements," and "the extant writings." See Amended Complaint ¶¶ 24, 26, 28, 29, 38, 39, 41. Moreover, we are left guessing as to the substance of the false statements in the written materials. The Amended Complaint rests on the generic assertion that the Defendants understated Collective's outstanding liabilities at $250,000 and also misrepresented that Collective had "full proprietary rights" to the billing software system. See Amended Complaint ¶¶ 24, 26, 28, 33, 39. Yet, the Amended Complaint does not specify whether the Defendants represented Collective's liabilities as of a particular date (in which case, it was conceivable that $250,000 was an accurate representation), or whether the representations were describing Collective's gross or adjusted liabilities, or only certain categories of liabilities. See GSC Partners CDO Fund v. Washington, 368 F.3d 228, 240 (3d Cir. 2004) (noting that merely alleging that the defendant had "understated liabilities by $145 million," without providing a "source to connect this accusation to record evidence" or explaining whether the figure refers to "audited or unaudited statements" is insufficient). Equally troubling is the Plaintiffs' allegation that the Defendants misrepresented Collective's "full proprietary interest" in the billing software. Whether the phrase "full proprietary rights" is intended to mean ownership or license rights is unclear, and we note that the record indicates that Collective at least had a licensee interest in the billing software, which could

be consistent with a "full proprietary right." See App. at 33.

The Amended Complaint is also materially deficient in identifying "who" made the misrepresentations and "when" they were made. As an initial matter, we note that the Amended Complaint is devoid of any particular facts to support the allegations against Sunita Chowdhry, Neil Chowdhry, or Collective. Moreover, with respect to Jenkens, the Amended Complaint is devoid of any factual allegations of its role in the securities fraud, other than the general assertion that the firm "joined the conspiracy" or prepared "undated writings" in conjunction with Rosenberg, without any description of Jenkens' role in preparing the writings or whether it knew the statements were false. See Amended Complaint ¶¶ 21, 23, 26, 28. As for the "when" of the allegedly false statements, or their delivery dates, the Amended Complaint relies on vague and generic time frames, using such terms as "thereafter," "at that time," "undated," "in or about February 2000," in "June 2000," and in "November 2000." See Amended Complaint ¶¶ 24, 25, 26, 28, 29, 30, 35, 37. Importantly, the timing of several of the misrepresentations is material to this case. For instance, Plaintiffs have named as Defendants the two law firms at which Rosenberg worked: Cowan Liebowitz and Jenkens. Rosenberg apparently left Cowan Liebowitz for Jenkens in June 2000, around the time when Rosenberg allegedly made certain misrepresentations to the Plaintiffs. By failing to plead the date more specifically, the Amended Complaint fails to put either Rosenberg or Jenkens on notice for the misrepresentations for which they are being

held liable.[2]  We note also that the Amended Complaint is mostly devoid of facts relating to "where" the alleged misrepresentations were made and/or prepared, and where the Plaintiffs received them.

Third, we reject the Plaintiffs' argument that the District Court erred in requiring them, at the Rule 12(b)(6) stage, to "quote or attach" the documents on which they relied to their Amended Complaint.  The Plaintiffs mischaracterize the basis of the District Court's decision, as the District Court clearly did not impose any requirement to "quote or attach" documents.  Rather, the District Court required the Plaintiffs to comply with their pleading obligations by specifically describing the identity and contents of the documents upon which they relied, or failing this, alternatively by quoting or attaching the documents.[3]  The District

[2]At oral argument, counsel for the Plaintiffs repeatedly stressed that the Amended Complaint pleaded facts with sufficient particularity so as to put the Defendants on notice as to the claims against them.  Not only do we disagree that the facts alleged provided adequate notice to the Defendants, we note that the purpose of the rigorous requirements of Rule 9(b), and the PSLRA more generally, is not limited to ensuring adequate notice-pleading.  Rather, as we have made clear on several occasions, the pleading requirements are intended to "provide an increased measure of protection for [the defendants'] reputations, and [to] reduce the number of frivolous suits brought solely to extract settlements."  In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1418 (3d Cir. 1997).  We must "rigorously appl[y]" the pleading requirements of Rule 9(b) and the PSLRA to effectuate these purposes as well.  Id. at 1417.

[3]The District Court emphasized the fact that the Plaintiffs had a choice on how to comply with the heightened pleading requirements of Rule 9(b) and the PSLRA at an oral hearing on the motion to dismiss: "[Y]ou've got an obligation, especially when I pointed out to you what was missing the first time, and gave you a chance to amend, that's your chance to come in and put down the date, or if not a date, attach a copy, quote the language, do something so that those trying to test the bonafides of the statements made upon information and belief can test them.  So how do I evaluate what 'various undated documents in or about February 2000' means?"  App. at 388 (emphasis added); see also App. at 389 ("But if you

Court correctly applied this principle, concluding that relying upon documents which are "undated, unquoted, undescribed, and unattached" falls well short of the rigorous pleading burden on a plaintiff in a securities fraud action.  See App. at 20.

Although generally a plaintiff is not required to attach documents to a complaint at the pleading stage, see In re Rockefeller Center Props., Inc. Sec. Litig., 184 F.3d 280, 287 (3d Cir. 1999); Burlington Coat Factory, 114 F.3d at 1426, a plaintiff under the PSLRA must go beyond vague and generic descriptions of the documents upon which they rely, and instead describe those documents in specific detail.  See, e.g., In re Silicon Graphics, Inc. Sec. Litig., 183 F.3d 970, 985 (9th Cir. 1999) (in dismissing a securities fraud action where plaintiff failed to describe company reports in detail, the Ninth Circuit noted "that a proper complaint which purports to rely on the existence of internal reports would contain at least some specifics from those reports as well as such facts as may indicate their reliability"); San Leandro Emergency Med. Group Profit Sharing Plan v. Phillip Morris Cos., Inc., 75 F.3d 801, 812 (2d Cir. 1996) ("Plaintiffs' unsupported general claim of the existence of confidential company sales reports that revealed the larger decline in sales is insufficient to survive a motion to dismiss.") (citing Serabian v. Amoskeag Bank Shares, Inc., 24 F.3d 357, 365 (1st Cir. 1994)); cf. Burlington Coat Factory, 114 F.3d at 1426 ("What the rule seeks to prevent is the situation in which a plaintiff is able to maintain a claim of fraud by extracting

---

have [the documents] why haven't you quoted them and identified them or attached them or done something to indicate the basis of the information and belief?").

-11-

an isolated statement from a document and placing it in the complaint, even though if the statement were examined in the full context of the document, it would be clear that the statement was not fraudulent.").[4]  Here, counsel for the Plaintiffs admitted to the District Court that they had in their possession all of the documents on which they relied, and yet made the "strategic decision" not to plead additional details of the documents, or to attach them or quote from them.  This "strategic decision" was inconsistent with the requirements of Rule 9(b) and the PSLRA.

Fourth, we agree with the District Court that the Amended Complaint contains insufficient allegations of scienter on the part of (1) Rosenberg and Jenkens, and (2) Atul Chowdhry and his relatives.  The PSLRA requires a plaintiff, "with respect to each act or omission," to "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."  GSC Partners, 368 F.3d at 237 (quoting 15 U.S.C. § 78u-4(b)(2)).  A "strong inference" of scienter may be established "either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior

_____

[4]Plaintiffs rely on Novak v. Kasaks, 216 F.3d 300 (3d Cir. 2000), for the proposition that they were not required to specifically describe the documents which were the source of their "facts."  However, Novak has no bearing on this matter as it addressed the issue of whether the PSLRA requires a plaintiff to disclose confidential sources in the complaint.  Id. at 313 ("[P]laintiffs who rely on confidential sources are not always required to name those sources, even when they make allegations on information and belief concerning false or misleading statements.").  There is no allegation in this matter that the documents upon which the Plaintiffs rely are confidential.

or recklessness." Id. (citations and quotations omitted).

With respect to Rosenberg and Jenkens, the Amended Complaint alleges that they had the "motive and opportunity" to perpetrate the fraud because they sought to collect unpaid legal fees that had accrued for past services rendered. See Amended Complaint ¶ 45. However, it is well-established that an allegation of motive based solely upon a desire to receive professional fees is insufficient. See GSC Partners, 368 F.3d at 238 ("[A]n underwriter's alleged motive to earn its underwriting fees is not alone sufficient to sustain a strong inference of fraudulent intent.) (quotation omitted); Ellison v. Am. Image Motor Co., 36 F. Supp. 2d 628, 639 (S.D.N.Y. 1999); Friedman v. Arizona World Nurseries, Ltd., 730 F. Supp. 521, 533-34 (S.D.N.Y. 1990); cf. DiLeo v. Ernst & Young, 901 F.2d 624, 629 (7th Cir. 1990).[5] Moreover, we question how Jenkens could have had a fraudulent intent when Rosenberg did not join Jenkens until at least June 2000, and the Amended Complaint is devoid of any facts indicating that Jenkens was retained by or owed any fees to Collective prior to Rosenberg switching from Cowan Liebowitz to Jenkens.

The Plaintiffs argue in the alternative that they pled sufficient facts constituting

---

[5]Plaintiffs seek to distinguish these cases by arguing that Rosenberg and the law firms had unpaid bills for prior services rendered, not for services rendered in connection with the offering of the securities. Not only do the Plaintiffs cite no authority in support of this distinction, we find it to be unpersuasive for the same reasons that courts have found a motive premised on a desire to collect current fees to be inadequate. See GSC Partners, 368 F.3d at 238 (noting that if a motive to obtain fees was sufficient to satisfy scienter element, "every underwriter, law firm, accountant, and investment advisor whose compensation or commission depended on the completion of an initial public offering would have a motive to commit fraud, which would make Rule 9(b) wholly meaningless").

evidence of conscious misbehavior or recklessness by the Defendants. This argument is without merit. The Amended Complaint makes no more than blanket assertions that Rosenberg or Jenkens "knew" that the representations were untrue, without any corroborating factual support explaining how and why the Defendants knew the statements to be false. See Amended Complaint ¶¶ 36, 45. However, as we have made clear, "it is not enough for plaintiffs to merely allege that defendants 'knew' their statements were fraudulent, or that defendants 'must have known' their statements were false." GSC Partners, 368 F.3d at 239 (citing In re Digital Island Sec. Litig., 357 F.3d 322, 328-29 (3d Cir. 2004)). Moreover, it is unclear how Rosenberg or Jenkens could have known of the alleged misrepresentations when the Amended Complaint states that Collective's CEO, Chowdhry, "concealed documents from everyone, including his controller, and hence the full extent of the liabilities were not known." See Amended Complaint ¶ 34.

We also find the Amended Complaint to contain insufficient allegations of scienter as to the other Defendants. Again, with respect to Sunita Chowdhry or Neil Chowdhry, the Amended Complaint contains few, if any, allegations that they acted with the requisite scienter. With respect to Atul Chowdhry, the Amended Complaint makes bald assertions that Chowdhry "knew the truth" and "knew" that the representations being made to the Plaintiffs "were untrue." Amended Complaint ¶ 45. As we have already noted, such allegations are inadequate. See GSC Partners, 368 F.3d at 239; Advanta, 180 F.3d at 539. Moreover, the Amended Complaint makes the allegation that he "had opportunity and motive" because he

"wished to receive and did receive the monies invested." Amended Complaint ¶ 45. However, this assertion, given the paucity of facts in the Amended Complaint supporting this assertion with particularity, is simply too conclusory to give rise to a "strong inference" of scienter. See Advanta, 180 F.3d at 535 ("[C]atch-all allegations that defendants stood to benefit from wrongdoing and had the opportunity to implement a fraudulent scheme are no longer sufficient [under the PSLRA]."). Indeed, to the extent that the Plaintiffs allege that Chowdhry was motivated by a desire to obtain capital from the securities investment to cover corporate expenses or debt, a motive so generic that almost every corporate officer in Chowdhry's position would possess it, the Plaintiffs' argument must fail as a matter of law. See GSC Partners, 368 F.3d at 237 ("[M]otives that are generally possessed by most corporate directors and officers do not suffice; instead, plaintiffs must assert a concrete and personal benefit to the individual defendants resulting from this fraud.") (quoting Kalnit v. Eichler, 264 F.3d 131, 139 (2d Cir. 2001)); see also GSC Partners, 368 F.3d at 237-38 (collecting cases).

Finally, we can find no error in the District Court's decision to deny the Plaintiffs leave to amend their complaint for a second time. We find the Plaintiffs' request to be controlled by our decision in In re Alpharma Inc. Securities Litigation, 372 F.3d at 153-54. In Alpharma, the Court affirmed a denial of leave to amend on the grounds that the plaintiff had "already filed previous complaints," had been given ample time to assemble the first amended complaint, had "failed to satisfy the stringent pleading requirements of the

-15-

PSLRA," and had "failed to propose an amendment that would satisfy [the requirements of the PSLRA]." Id. at 153-54. Likewise, Plaintiffs have filed two complaints, have had ample time to prepare those complaints, have both times failed to comply with the pleading requirements of the PSLRA, and failed to seek leave in the District Court and/or proffer a second amended complaint curing the deficiencies or explaining what additional facts they could plead. Moreover, the Plaintiffs' argument that leave to amend would not be futile because they can attach the documents in question rests on a misunderstanding of the District Court's decision, one that we have already discussed above. We also note that during oral argument on the motion to dismiss the Amended Complaint, the District Court asked counsel for the Plaintiffs: "I just want to be sure, now that you've had the opportunity to amend, that you have now put before me all the facts upon which your statements upon information and belief are based, and documents. Yes or no?" To which counsel replied: "I believe we have." App. at 386. In these circumstances, and given the additional prejudice and unfairness that would result to the Defendants from having to defend against a third complaint, we see no abuse of discretion in the District Court's decision.

## IV.

We have considered all of the arguments advanced by the parties and conclude that no further discussion is necessary. Accordingly, the judgment of the District Court will be affirmed.

———

*Klein et al. v. Autek Corporation et al.*, No. 04-3072

BECKER, *Circuit Judge*, concurring in part and dissenting in part.

I join in the majority's opinion and in the judgment except insofar as they affirm the order dismissing the claims against Atul Chowdhry. In my view, if we read the complaint with the generosity required by Rule 12(b)(6) of the Federal Rules of Civil Procedure, under which "all facts alleged in the complaint and all reasonable inferences that can be drawn from them must be accepted as true," *Malia v. Gen. Elec. Co.*, 23 F.3d 828, 830 (3d Cir. 1994), a picture emerges of Chowdhry as the mastermind of a complex scheme to defraud his investors. I believe that, even under the heightened pleading standards of Rule 9(b) and of the Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4(b) ("PSLRA"), the complaint sufficiently alleges misbehavior and scienter on Chowdhry's part.

First of all, the complaint describes Chowdhry's actions in some detail. Thus, according to the plaintiffs, Chowdhry prepared documents with Rosenberg in February 2000 that "represented that Collective's outstanding liabilities were approximately $250,000," and "that Collective had full proprietary rights to the communications systems being marketed." (¶ 24) He "orally represented [to Klein] at that time that Collective owned and had full proprietary rights to the system." (¶ 25) He approved June 2000 documents, intended for investors, that represented that Collective had "full proprietary rights to the entire system." (¶ 28) (Despite the majority's conclusion, *see ante* at 8, I do not view this representation as consistent with a mere licensee interest.) He reviewed and approved November 2000 offering

-17-

documents that misrepresented Collective's interest in its system and "projected the existing and future liabilities of Collective without disclosing the true TATA relationship and liability." (¶ 39) He used search firms to hire employees, incurred search fees, and then fired the employees quickly; he also failed to disclose this wasteful practice and the fee liabilities that it created. (¶ 33B)

The complaint also alleges that Chowdhry's statements to investors were false, and that he knew them to be false. "The stated $250,000 liabilities were understated by hundreds of thousands of dollars of undisclosed liabilities." (¶ 33A) "Chowdhry and Collective did not own the entire system"; instead, the billing and collection system was licensed from TATA, Collective had no "proprietary rights" to that system, and "Collective owed TATA more than $600,000—an additional liability that had not been disclosed—for the work performed by TATA. These amounts had not been paid and no further work was going to be done on the system to enable Collective to have a fully operational billing system and a staff trained to use it until said liability was paid." (¶ 33C; *see also* ¶ 44(a))

The complaint further alleges that Chowdhry used Collective and its associated corporations as a vehicle for embezzlement, and that funds invested in the companies were funneled to Chowdhry and his family. "Autek was used by Chowdhry as a funnel to drain money out of Collective for himself and his wife, defendant Sunita, and his cousin Neil." (¶ 33A) He and the other defendants "intended to divert significant amounts of the invested monies . . . to pay Chowdhry and his family, rather than pay TATA's bill and improve the

-18-

system." (¶ 33D) "Autek had been dissolved . . . and was only being used by Chowdhry to take money out of Collective." (¶ 36) "Autek was used . . . as a cover to funnel money to Chowdhry." (¶ 44(b)) Chowdry "never intended to permit any of the investors to become shareholders of Collective and to that end, never caused the issuance of any shares of Collective or Wireless stock to those who became investors . . . . Instead, defendant Chowdhry claimed at all times that he owned Collective and its products[.]" (¶ 44(c)) Chowdhry hired Collective employees who "were in fact working on other projects designed to benefit Chowdhry and his family interests." (¶ 44(d))

In my view these allegations are sufficient to satisfy Rule 9(b) and the PSLRA. The complaint lists documents with reasonable specificity, explains what those documents said, and avers that those statements were false. Chowdhry cannot reasonably claim that he is unable to defend himself simply because he doesn't know "whether the Defendants represented Collective's liabilities as of a particular date . . . , or whether the representations were describing Collective's gross or adjusted liabilities . . . ." *Ante* at 8. Nor does the complaint's use of the term "full proprietary rights" somehow fail to inform Chowdhry that he stands accused of misrepresenting Collective's interest in the TATA system in certain specific documents and oral presentations. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1418 (3d Cir. 1997) ("Rule 9(b)'s heightened pleading standard gives defendants notice of the claims against them, provides an increased measure of protection for their reputations, and reduces the number of frivolous suits brought solely to extract settlements."

(citations omitted)). Similarly, the other purposes of Rule 9(b) and the PSLRA, deterring frivolous suits and protecting defendants' reputations, do not seem to me to demand that we reject this complaint. The allegations here are not general averments of fraud, but tolerably specific factual claims about misstatements that, if proven, would violate the securities laws and entitle plaintiffs to damages.

I also do not share the majority's dissatisfaction with the complaint's dates. The complaint refers to various undated documents and oral representations from 1999 and 2000. But it specifies the dates on which those documents were delivered as closely as was possible given the limited information available to the plaintiffs years after the fact—generally, by month and year, but not by day. To hold that the complaint in this case fails because plaintiffs cannot specify the precise date of undated, informal documents delivered to them years ago creates an excessively high barrier to any plaintiff who wants to bring a securities fraud suit based on misrepresentations not contained in formal public statements. In cases like this one, I simply do not think that the language of Rule 9(b) or the PSLRA requires all of the detail that the majority demands. We have held as much in the past:

> Rule 9(b) requires plaintiffs to plead with particularity the "circumstances" of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior. *It is certainly true that allegations of "date, place or time" fulfill these functions, but nothing in the rule requires them.* Plaintiffs are free to use alternative means of injecting precision and some measure of substantiation into their allegations of fraud.

*Seville Indus. Machinery Corp. v. Southmost Machinery Corp.*, 742 F.2d 786, 791 (3d Cir.

1984) (emphasis added).

Similarly, while the majority is correct that *EP MedSystems, Inc. v. Echocath, Inc.*, 235 F.3d 865 (3d Cir. 2000), is factually distinguishable, I think that it is too quick to distinguish that case. In *EP MedSystems*, a panel of this Court approved a relaxed pleading standard under the PSLRA because the plaintiff had invested "on the basis of personal representations by [defendant] executives to [plaintiff] officers," and the complaint was "not . . . a class action brought by shareholders with an insignificant interest in the company; it is an individual action, based on a transaction arising from direct negotiations between the parties to the action." *Id*. at 881. All of the quoted statements are just as true of this case. And the *EP MedSystems* panel concluded: "It is difficult to see how MedSystems could have pled fraud or scienter with more specificity without having been given the opportunity to conduct any discovery." *Id*. at 882.

This case is a great deal closer to *EP MedSystems* than it is to the typical securities cases cited by the majority. In the typical case, plaintiffs rely on allegedly misleading public statements, SEC filings, or formal offering documents. *See, e.g.*, *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1416 (press releases and SEC filings); *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 184 F.3d 280, 284 (3d Cir. 1999) (proxy statement); *GSC Partners CDO Fund v. Washington*, 368 F.3d 228, 235 (3d Cir. 2004) (offering circular). Such statements are easy to date and describe in detail. In contrast, the informal and undated documents involved here make such specificity harder, and the more lenient standard of *EP*

*MedSystems* seems more appropriate.

I also believe that the complaint adequately alleges that Chowdhry operated with the requisite state of mind. The complaint says:

> Chowdhry had opportunity and motive as well as actual knowledge. He wished to receive and did receive the monies invested. He also knew the truth. He had the actual facts documented and thus knew that the oral statements and writings given to the plaintiffs were untrue and not in accord with the actual facts.

¶ 45(a). This statement, combined with the factual allegations set forth above, is more than sufficient to meet the scienter pleading requirements of § 78u-4(b)(2).

The majority appears to misunderstand the allegations against Chowdhry. The Court writes: "Indeed, to the extent that the Plaintiffs allege that Chowdhry was motivated by a desire to obtain capital from the securities investment to cover corporate expenses or debt, a motive so generic that almost every corporate officer in Chowdhry's position would possess [it], the Plaintiffs' argument must fail as a matter of law." *Ante* at 15. This is quite true, but it is impossible to read the complaint as alleging any such thing. The complaint may hint that Chowdhry wanted money "to cover corporate expenses or debt," but its focus is elsewhere. It repeats over and over again that Chowdhry would "draw monies from Collective for his personal benefit" (¶ 33A), that he and other defendants "intended to divert significant amounts of the invested monies . . . to pay Chowdhry and his family" (¶ 33D), that he was using Autek "only . . . to take money out of Collective" (¶ 36), and that Collective employees were "working on other projects designed to benefit Chowdhry and his family

interests" instead of working for the benefit of Collective (¶ 44(d)).

In short, the gravamen of this complaint is not a generic allegation that a corporate executive puffed his company's prospects in order to secure his job and enhance the value of his stock options. Chowdhry is not accused of stretching the truth in order to strengthen his company. He is being accused of lying and stealing to line his own pocket at the expense of his company. The principles cited by the majority are simply irrelevant to these accusations. If we believe the facts pled in the complaint, they clearly "giv[e] rise to a strong inference that [Chowdhry] acted with the requisite state of mind," 15 U.S.C. § 78u-4(b)(2), and the scienter pleading requirements have therefore been met.

I certainly do not suggest that the plaintiffs here would be likely to win their suit; they may not even survive summary judgment. But I believe that summary judgment is the proper place to test the factual sufficiency of plaintiffs' allegations. To my mind, their pleadings are sufficient to meet the Rule 9(b) and PSLRA requirements as to Atul Chowdhry, and I would reverse the District Court's order dismissing the suit against him. I therefore respectfully dissent.